UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

Enid XIMINES

Plaintiff

-against-

GEORGE WINGATE HIGH SCHOOL and
the NEW YORK CITY DEPARTMENT OF
EDUCATION

Defendant .

-------------------------------------------------x

<u>MEMORANDUM AND ORDER</u>
05 CV 1214 (ILG)

GLASSER, United States Senior District Judge:

## **INTRODUCTION**

This action is brought by Enid Ximines ("Plaintiff"), a public high school teacher, against George Wingate High School ("GWHS") and the New York City Department of Education ("D.O.E." or "Defendant"). Plaintiff alleges that she has been denied promotional opportunities because of her age and retaliated against for lodging complaints about defendants' age-related discriminatory conduct. The Complaint states causes of action under 29 U.S.C. § 621, et seq., (the Age Discrimination in Employment Act, "ADEA"), the New York State Human Rights Law § 290, et seq., ("NYSHRL"), and New York City's Human Rights Law § 8-107, et seq. ("NYCHRL"). Before the Court are Plaintiff's motion to amend the Complaint pursuant to Fed. R. Civ. P. 15 and Defendant's motion for judgment on the pleadings in accordance with Fed. R. Civ. P. 12(c).

1

## JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's ADEA claims, pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

Personal jurisdiction is properly exercised over defendant D.O.E. because it is located, conducts operations, transacts business, and provides services within New York, and its principal place of business is located in New York City.

GWHS, however, is not a sueable entity. N.Y. Educ. L. § 2590-g(2) specifically provides that the Board of Education shall "for all purposes, be the government or public employer of all persons appointed or assigned by the city board or the community districts; provided, however, that the chancellor shall have the authority to appoint staff." Litigation is one of the purposes for which the Department of Education is the proper respondent as employer.[1]

## PROCEDURAL HISTORY

On or about September 11, 2004, Plaintiff mailed to the Equal Employment Opportunity Commission ("EEOC") a copy of an EEOC Charge of Discrimination against Defendants. The EEOC received the mailing on September 15, 2004, and sent a copy of the charge to Defendants on October 5, 2004. The EEOC issued a "right to sue" letter on December 6, 2004. The Complaint in this action was filed on March 4, 2005, 88 days

---

[1] The Department of Education, rather than the Board of Education, is the proper defendant in light of the recent reorganization of the New York City school system. See Perez ex rel. Torres v. City of New York, 9 Misc.3d 934, 936-37, 804 N.Y.S.2d 632, 634 (N.Y.Sup.2005) ("[I]n light of the wholesale transfer of power and responsibility from the Board of Education to the Mayor, the City may not now shield itself from liability by claiming that the Board of Education is the responsible party.").

later.

Defendants answered the Complaint on June 3, 2005 and moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on August 22, 2005.  The Court heard argument on Defendants' motion and pointed out certain timeliness issues created by discrepancies between the EEOC Charge and the filed Complaint that might be cured by a motion to amend.  Plaintiff now seeks to amend the Complaint to include certain allegations and claims not initially made.

## **BACKGROUND**

Ximines, a fifty-seven year old woman, has been a public school teacher at GWHS since 1985.  She alleges that because of her age, and in retaliation for alleging age discrimination, D.O.E. has denied her promotions to assistant principal positions for which she applied and for which she was qualified.  The following allegations are made in the Complaint:

Since 1991, Ximines has held an Assistant Principal Math Supervision license. Toward the end of 2002, the assistant principal of the math department at GWHS, Mr. Arnofsky,  indicated that he would be retiring during the spring of 2003.  Ximines asked Mr. Arnofsky and the high school principal, Herbert Hogan, if she could fill the position, which was to become vacant in September 2003.  Her request was ignored, and two younger men, Clive Pryce and Cedric Hines, were instead coached to fill the position. Neither of the men remained at GWHS, and the position remained available.

At the end of spring semester 2003, the positions of Assistant Principal, Pupil Personnel and Assistant Principal, Administration became available at GWHS.  Ximines was formally qualified for each position and applied for both, but was not selected for

either one.  Instead, the first position was first given to a younger woman, Ms. Entorie, and then, about the time Ms. Entorie was promoted to another position, both positions were combined and given to Ms. Bradbury.  Both Entorie and Bradbury were considerably younger and less experienced than Ximines.

In August 2003, Ximines again asked Hogan if she could fill the position, explaining her plans to improve the math department and reminding him of her qualifications and credentials.  Hogan responded that the school needed a "vibrant" person and on August 5, 2003, advised Ximines by letter that she had not been selected. Instead the position was given to Rajendra Dyal, who at the last moment turned it down. Thereafter, on or about September 14, 2003, defendant announced that the position was given to Ms. Atina Modesto, a younger woman with far less experience.

Ximines filed a complaint with D.O.E's Office of Equal Opportunity in September 2003.  In October 2003, D.O.E. responded, finding no evidence of discrimination, and advised Ximines of her right to appeal to the Chancellor of the New York City Board of Education. Two weeks later, Ximines filed a grievance with the Chancellor's Office and never received a response.

Shortly after she began her employment at GWHS as assistant principal, Modesto allegedly began a pattern of hostile behavior towards Plaintiff.  For example, Modesto would walk in and out of Ximines's classes with great frequency and without prior notice or permission.  At other times, Modesto approached Ximines in an aggressive manner, suggested that she should apply for work elsewhere and suggested that she should retire. These actions were allegedly undertaken solely to harass and intimidate Ximines with the hope that she would either retire or transfer to a position at another school.

Modesto did not treat other teachers at GWHS in the same manner.

In January, 2004, Modesto accessed the records of Ximines's students, and without Ximines's permission, changed certain student grades for the fall 2003 semester. Ximines complained to Hogan about Modesto's alleged misconduct in March 2004, and followed-up with a complaint to the State Department of Education in June 2004. She also filed a Step One Grievance with her union in March 2004, challenging the propriety of these grade changes. That Grievance was denied and Ximines thereafter filed a Step Two Grievance. A Step Two hearing was supposed to take place on May 21, 2004, but never did.

On May 4 and 5, 2004, Modesto, allegedly in retaliation for Ximines's grievances, showed up unannounced in Ximines's class, acted in an intimidating and harassing manner and filed a Formal Observation Report stating that Ximines's performance was unsatisfactory. Ximines made a written response to the Report, and noted that there was no post-observation conference, as required. In connection with this process, Ms. Modesto asked Ximines, "Don't you think it's time you retired, Ms. Ximines?" On May 26, 2004, Ximines filed a Step One Grievance with Hogan, and a Step Two Grievance on June 25, 2004 with the Region 6 Superintendent. Ximines also filed a Step Three Grievance with the Chancellor's Office. In her various grievances, Ximines sought to remove the "unsatisfactory" report from her file. All three grievances were denied, and Ximines was eventually advised that the report would remain in her file.

On June 22, 2004, Plaintiff received a phone call from the Brooklyn Superintendant's Office, inviting her to apply for the permanent Assistant Principal position. She was interviewed for the position on June 24, 2004 and told that she would

hear from the committee in a few days, but never heard back.

Ximines alleges that "over the past few years," she has applied for various positions within the New York City public school system as assistant principal, math supervision and administration. She has applied for this position in nine different schools. On each occasion she was denied the position, allegedly on account of her age and because she had on numerous occasions challenged the school system's age-related discriminatory treatment of her. Each position was eventually awarded to a younger and less experienced person. Ximines complained on several occasions to appropriate authorities within the public school system about this allegedly discriminatory treatment, but nothing was done.

Ximines finally claims that as a result of discriminatory and retaliatory treatment she has been unable to advance within the ranks of the New York City public school system. Ordinarily, after two years as assistant principal, individuals are eligible for consideration for vacancies that arise for the position of principal. Thus, because Ximines has been discriminated and retaliated against by being denied any assistant principal position, she has been prevented from advancing within the school hierarchy to the position of principal, and beyond, all to her financial detriment. The pattern of misconduct has created emotional distress and trauma for the Ximines, leading to various ailments for which she has sought and continues to receive medical treatment.

## DISCUSSION

### I.    Motion to Amend the Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive

pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). "However, under Fed.R.Civ.P. 15(a), leave to amend a pleading may <u>only</u> be given when factors such as undue delay or undue prejudice to the opposing party are absent." <u>SCS Communications, Inc. v. Herrick Co., Inc.</u>, 360 F.3d 329, 345 (2d Cir.2004) (emphasis in original) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (granting leave to amend freely absent, <u>inter alia</u>, bad faith, dilatory motive, failure to cure deficiencies or futility)). In response to the Court's observations at argument, Plaintiff seeks four categories of amendments.[2]

First, Ximines seeks to include an allegation that a copy of the EEOC Charge she filed on September 15, 2004 was mailed to Defendants on October 5, 2004. This is evidenced by a "Notice of Charge" document recently discovered by Plaintiff. (<u>Karasik Affirmation</u>, Ex. 3). Defendants do not contest this amendment. Because the Notice of Charge conclusively establishes the date upon which the Defendant was notified of Plaintiff's federal claims, and was undisputedly received by Defendant, this aspect of the motion to amend the Complaint is granted.

Next, Ximines seeks to include certain factual allegations absent from the

---

[2] Plaintiff's suggested amendments go well beyond what the Court contemplated at argument, which was merely to reconcile the Complaint's allegations to the events identified in the EEOC Charge. Plaintiff now seeks amendment not only to reconcile those documents, but to allege additional facts and causes of action.

Complaint but noticed to Defendants in the filed EEOC Charge. Specifically, Plaintiff alleges that Modesto was named Assistant Principal only on an interim basis in 2003, that in accordance with D.O.E. policy Ximines was invited to interview and interviewed for the permanent appointment on June 24, 2004, and that she was told she would hear from the committee within three to five days. Defendant does not dispute that it received notice of these facts along with the EEOC Charge. Finding no undue prejudice in an amendment to the Complaint that conforms its allegations to the events that were properly noticed by means of the forwarded EEOC Charge, the Court grants this aspect of the motion to amend the Complaint.

Ximines also seeks to amend the Complaint to include facts that were never properly noticed to the Defendant. Specifically, she alleges that on August 13, 2004, she called the chairperson to inquire about the hiring process for the Assistant Principal position. The chairperson allegedly denied knowledge of whether or not Ximines had been selected for the position and referred Ximines to another individual, who similarly declined to give her any additional information. Ximines alleges that she first learned that she had not been awarded the position on September 7, 2004, the first day of the fall semester, when Deon Thomas was announced as the new Assistant Principal.

These allegations were never properly noticed to Defendant. When Plaintiff filed her EEOC Charge in September 2004, she appended a number of supplemental pages detailing the facts underlying her claims. These allegations were on the last supplemental page which, for whatever reason, was neither present in the EEOC file nor attached to the October 2004 Notice of Charge forwarded to Defendants by the EEOC. Plaintiff contends that the EEOC must have mishandled her file and lost the final page,

but the record is equally susceptible to the inference that in oversight, Plaintiff errantly failed to submit that final page with the rest of her EEOC paperwork.  In any event, it is undisputed that Defendant never received a copy of the final page Plaintiff intended to submit with her EEOC Charge.  (See Ximines Aff., ¶¶ 4-5 ("[T]he EEOC [file] does not contain the fourth page to my Charge . . . [T]he EEOC Charge documents that the Defendants produced also does not contain the fourth page of my Charge.")

To allow Plaintiff to amend her Complaint to include these unnoticed allegations would prejudice Defendants defenses of untimely notice.  As discussed infra, Section III, certain elements for Plaintiff's federal failure to promote claim were never timely presented to the EEOC or Defendant.  Moreover, as discussed infra, Section VI, the city and state law claims are subject to a strict three-month notice requirement.  Thus, a city or state law claim based on the facts forwarded by the EEOC in October, facts which all took place prior to July 2004, are time-barred as outside the three-month limitation period.  Allowing Plaintiff to allege additional facts from the missing final page of the EEOC Charge would resuscitate the claims by presenting allegations that transpired within the three-month limitations period.  Plaintiff relied at her own peril upon the EEOC's practice of forwarding a copy of her federal discrimination charge to satisfy her notification requirement for the city and state claims.  The Court will not allow her to resurrect untimely claims by amending the Complaint to include allegations that she acknowledges were never noticed to Defendants before the expiration of the limitations period.  Plaintiff's motion to amend the Complaint to include these allegations is denied.

Fourth, Ximines seeks to bring additional causes of action under federal and state laws for the creation of a hostile work environment and retaliation.  29 U.S.C. §

623(a)(1) provides that "[i]t shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  Under this section, a plaintiff may recover when an employer creates a hostile working environment.  See Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir.1999) (recovery under hostile work environment theory) (citing Crawford v. Medina General Hosp., 96 F.3d 830, 834-835 (6th Cir.1996)).  For the reasons discussed infra, Section V, the Court finds Plaintiff's factual allegations insufficient to survive a motion to dismiss, and thus deems it futile to amend the Complaint to include a separate claim for the creation of a hostile work environment.  Thus, this aspect of the motion to amend the Complaint is denied.  See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604 (2d Cir.2005) ("In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion  to  dismiss pursuant to Fed.R.Civ.P. 12(b)(6).").

As to the additional proposed retaliation claim, the ADEA retaliation claim is already set forth as a separate Count in the Complaint (Count II).  Thus, Plaintiff's motion to amend the Complaint to include an additional ADEA retaliation claim is denied as it would be duplicative.

The additional proposed city and state law discrimination and retaliation claims, for the reasons discussed infra Section VI, are time-barred; the requirement of timely notice of claim to Defendant applies equally to the discrimination claim based on a hostile work environment theory as to the retaliation claims.  Plaintiff failed to provide timely notice of claim to Defendant, so the motion to amend to include additional state

and municipal law claims is denied as futile.

Finally, Ximines seeks to include a cause of action for intentional infliction of emotional distress. Because Plaintiff has not alleged that any prior notice of this claim was properly served on Defendant, amending the Complaint to include this tort action would be futile, as the preconditions for the claim have not been met. Thus this aspect of the motion to amend is denied.

## II.     Standards for a Motion to Dismiss Pursuant to <u>Rule 12(c)</u>

In deciding a motion under <u>Fed.R.Civ.P. Rule 12(c)</u>, the Court applies the same standard as that applicable to a motion under <u>Fed.R.Civ.P. 12(b)(6)</u>, accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. <u>Ziemba v. Wezner</u>, 366 F.3d 161, 163 (2d Cir.2004); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court also considers those documents deemed incorporated into the Complaint and essential to its allegations. <u>See</u> <u>Gregory v. Daly</u>. 243 F.3d 687, 691 (2d Cir.2001) (treating allegations in an affidavit submitted to the EEOC as integral to a complaint).

A complaint will be dismissed under Rule 12(c) "if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." <u>Patel v. Searles</u>, 305 F.3d 130, 135 (2d Cir.2002) (internal quotations omitted), <u>cert. denied</u>, 538 U.S. 907 (2003). Cognizant of this liberal pleading standard, however, "a complaint consisting [only of] naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." <u>Yusuf v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir.1994) (quoting <u>Martin v. New York State Dep't of Mental Hygiene</u>, 588 F.2d 371, 372

(2d Cir.1978)).  "[A] simple declaration that defendant's conduct violated the ultimate legal standard at issue (e.g., it was 'because of sex' or 'severe or pervasive') does not suffice . . . [a plaintiff must] assert facts from which, construing the complaint liberally and in the plaintiff's favor, one could infer such a violation."  Gregory, 243 F.3d at 692. See also Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir.2004) (allowing "defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against him.").

### III.    Plaintiff's Discriminatory 'Failure to Promote' Claim

"Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir.2001) (per curium).  The complaint with the EEOC must be lodged within 300 days of the accrual date for the cause of action.  See 42 U.S.C. § 2000e-5(e) and (f); 29 U.S.C. § 626(d); Harris v. City of New York, 186 F.3d 243, 248 (2d Cir.1999).  This 300-day requirement functions as a statute of limitations for ADEA failure to promote claims in that incidents not timely charged to the EEOC will be time-barred from the courts.  See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir.1996).

The accrual date for a failure to promote age discrimination claim is the date on which "a plaintiff receives notice sufficiently definite to permit [her] to make out a prima facie case of age discrimination."  Petrelli v. City of Mount Vernon, 9 F.3d 250, 254 (2d Cir.1993).  Cf.  Smith v. United Parcel Service of America, Inc., 65 F.3d 266, 268 (2d Cir.1995) ("[T]he limitation period begins to run on the date when the employee receives a definite notice . . . [that states] the official position of the employer.").  A

plaintiff alleges a prima facie case for failure to promote discrimination by alleging that "1) she is a member of a protected class; 2) her job performance was satisfactory; 3) she applied for and was denied promotion to a position for which she was qualified; and 4) the position remained open and the employer continued to seek applicants." <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 565 (2d Cir.2000) (internal quotations omitted).

The three hiring incidents alleged in the EEOC Complaint are the spring 2003 hiring of two administrative Assistant Principals, the October 2003 hiring of Ms. Modesto to the interim position of math assistant principal and the summer 2004 interview process to permanently fill the math assistant principal position. Because the EEOC charge was not filed until September 2004, any action based on the 2003 hirings is outside the 300-day notice period and time-barred. Moreover, though she presented to the EEOC and the Defendant the fact that she had been invited to interview and had been interviewed for the permanent position in June 2004, Plaintiff never presented to the EEOC the allegation that the Defendants denied her promotion to that position and that the position remained open. Because she never presented that allegation to the EEOC, Plaintiff has failed to fulfill a precondition to bringing the claim in federal court. Plaintiff's failure to promote claim must be dismissed.

### IV.    Plaintiff's Retaliation Claim

The elements of a discriminatory retaliation claim are: "participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." <u>Cruz</u>, 202 F.3d at 566. An adverse employment

action is "a materially adverse change in the terms and conditions of employment . . . [S]uch an action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir.2005) (internal quotations omitted). "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). See also Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir.2003) (identifying additional examples of adverse action). While the Court must give the Plaintiff the benefit of every plausible inference from the allegations of the Complaint, it is "nonetheless improper to assume that the [plaintiff] can prove facts that [she] has not alleged." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001) (citing Associated Gen. Contractors of California, Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)). If, based on the facts alleged and plausible inferences drawn, it appears beyond doubt that a plaintiff cannot prove facts to support her claim, the motion to dismiss is properly granted.

The overwhelming bulk of the factual allegations present in Ximines's Complaint relate to the failure to promote her to the Assistant Principal position at GWHS, first on a temporary basis and then on a permanent basis, and her subsequent interpersonal conflicts with the woman who was hired for the position and thus subsequently exercised supervisory responsibility over her. Though she has made a "simple declaration that defendant's conduct violated the ultimate legal standard at issue," such a conclusory allegation "does not suffice" to survive a motion to dismiss, Gregory, 243 F.3d at 692, because she has failed to allege "circumstances giving rise to a plausible

14

inference of . . . discriminatory intent." <u>Yusuf</u>, 35 F.3d at 713.

Plaintiff's allegations with respect to the 2003 hiring are devoid of any basis on which to infer the process was tainted with discriminatory intent. First, she alleges that in response to her "explaining [to the principal] her plans to improve the math department and reminding him of her qualifications and credentials," she was told "that the school needed a 'vibrant' person." (<u>Am. Compl.</u> ¶ 11). Second, she alleges that certain younger individuals were "coached" to fill the position, but she acknowledges that they were not ultimately selected. Third, she alleges the position was offered to an individual, whose age is not alleged, who refused the position. And finally, she alleges that the interim position was ultimately given to Ms. Modesto, who was younger than her. (<u>Am. Compl.</u> ¶¶ 10-11). Even assuming that these allegations are true, they do not warrant a plausible inference of discriminatory intent. <u>Cf.</u> <u>Yusuf</u>, 35 F.3d at 714 (dismissing racial discrimination claim where the only basis for plaintiff's claim was that the defendants were white and he was Bengali.). Not every consideration, or even appointment, of a younger person over an older person for a position provides the basis for a federal claim of age discrimination. In this case, by Plaintiff's own allegations, the younger "preferred" candidates were not ultimately selected for the position, a third-party whose age is not specified was offered and refused the position, and ultimately, a younger woman filled the position. No plausible inference of age-discrimination can be drawn from these allegations. Moreover, the fact that Plaintiff had been turned down for similar but unrelated positions at many other schools, (<u>Compl.</u> ¶ 21), provides the basis for a plausible inference that she was denied the position for age-neutral reasons. In the absence of any factual allegations supporting a contrary conclusion, the Court

finds it an implausible inference that every independent hiring committee Ximines faced discriminated against her on the basis of her age.

Ximines also alleges a number of unpleasant interactions she subsequently had with Ms. Modesto shortly after Ms. Modesto was appointed Assistant Principal and became her supervisor on an interim basis. These interactions, however, similarly fail to support an inference of discriminatory intent, and are moreover deficient for failing to allege any adverse employment action. Plaintiff asserts that Modesto entered her class unannounced and exercised supervisory prerogative to review and revise Plaintiff's grading practices. Nothing about these allegations suggests age-related bias. Neither does the single age-related comment alleged by Plaintiff, that on one occasion Modesto said "Don't you think it's time you retired," warrant an inference of discriminatory intent. "[O]ffhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir.2004). See also, e.g., Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir.2001).

Notably, Plaintiff makes not a single factual assertion with respect to the hiring process for the permanent Assistant Principal position in 2004 that warrants any inference, plausible or not, that age-related discrimination factored into the determination. (See Compl. ¶¶ 13–14).

In the end, even assuming that Ximines has alleged that she complained about discrimination and that Defendants failed to promote her, she has wholly failed to provide factual allegations that support a plausible inference of any causal relationship between her complaints and any adverse action, or discriminatory intent on the part of

any of the Defendant's employees.  While the Court gives her the benefit of every plausible inference assuming her pleadings are true, it will not assume additional facts to support her conclusory allegations.  Her retaliation claim cannot survive a motion to dismiss.

## V.    Plaintiff's Hostile Work Environment Claim

A plaintiff pleading a hostile work environment claim must plead facts from which one can infer "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer."  Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002) (citing Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir.1997)).  The plaintiff must show that the workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."  Alfano, at 373.

For similar reasons that Plaintiff's retaliation claim fails, her allegation of a hostile work environment fails.  Though she has alleged the formal elements of a hostile work environment claim in the proposed Amended Complaint, (See Am. Compl. ¶ 44-47), even assuming that each of her factual allegations is true, and granting her the benefit of every plausible inference therefrom, it is implausible that her work environment was chronically infected with age discrimination.  Plaintiff has barely alleged even a "string of isolated incidents occurring over a multi-year period," which are "relatively minor and infrequent," and "will not meet the standard for a discriminatorily hostile environment."  Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir.2004) (characterizing "being castigated for not doing his job, accused of failing to

17

respond to calls, accused of playing games on the police radio, issued a summons by Knapp for failing to remove ice from a home Deters owned, told by a police captain that he would never get selected for a specialized position, and ordered to remain standing at a street corner for hours" as such a string of incidents.).  <u>See also</u> <u>Mormol v. Costco Wholesale Corp.</u>, 364 F.3d 54, 58-59 (2d Cir.2004) (finding no hostile work environment claim where supervisor allegedly said he would not approve vacation unless plaintiff had sex with him and retaliated against her with disciplinary action) <u>comparing</u> <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768 (2d Cir.1998) (finding no issue of hostile work environment where plaintiff's supervisor allegedly made an appreciative comment about plaintiff's buttocks and deliberately touched her breasts with papers he was holding), <u>with</u> <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 70, 75-76 (2d Cir.2001) (finding a triable issue where a supervisor touched plaintiff in unwelcome manner on a "daily basis," made "obscene leers at her," "tried to peer down her blouse and up her skirt," and made "approximately ten or twenty" remarks about her sex life), <u>and</u> <u>Raniola v. Bratton</u>, 243 F.3d 610, 621 (2d Cir.2001) (finding a triable issue where plaintiff alleged and proffered evidence that, over the course of two and one-half years, she was subjected to "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm").  Without pleading a set of facts which,  if true, support her conclusory legal allegations, Plaintiff's hostile work environment claim cannot survive a motion to dismiss.

## VI.  Plaintiff's Failure to Comply with N.Y. Educ. L. § 3813

Section 3813(1) of the New York Education Law requires potential litigants to file a notice of claim in advance of a suit against the Department of Education.  "No action or special proceeding, for any cause whatever" shall be pursued "unless it shall appear by and as an allegation in a complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after accrual of such claim" and the body has "neglected or refused to make an adjustment or payment."  N.Y. Educ. L. § 3813(1).  Additionally, Section 3813 imposes a one-year statute of limitations on any cause of action arising against a school district or board of education.  Id., § 3813(2-b).

Plaintiff correctly points out that "[u]pon application, the court, in its discretion, may extend the time to serve a notice of claim."  N.Y. Educ. L. § 3813 (2-a).  However, "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school."  Id.  This statutory limitation to the Court's power to extend the time to serve notice of claim divests the court of authority to grant an extension after the statute of limitations for the claim expires. See, e.g., Lenz Hardware, Inc. v. Board of Educ., 24 A.D.3d 1278, 809 N.Y.S.2d 310, (4th Dept.2005); Kingsley Arms, Inc. v. Copake-Taconic Hills Cent. School Dist., 9 A.D.3d 696, 780 N.Y.S.2d 805, (3d Dept.2004); Henry Boeckmann, Jr. & Associates, Inc. v. Board of Educ., Hempstead Union Free School Dist. No. 1, 207 A.D.2d 773, 616 N.Y.S.2d 395 (2d Dept.1994).  No application for an extension of time was made to this Court until the filing of response papers to Defendant's 12(c) motion on September 12, 2005, more than

19

a year after the events took place that gave rise to Plaintiff's causes of action, and after the one-year statute of limitations expired.  Thus, this Court is without authority to grant an extension of time.  Moreover, a judicially-granted extension of time requires a showing of good cause.  See CPLR § 2004 ("the court may extend the time fixed by any statute . . . upon good cause shown . . ." (emphasis added)).  Plaintiff has made no such showing, but simply asserted that she "is entitled to leave of the court," based on § 3813(2-a).  (Pl Mem. Opp. Def. Mot. to Dismiss at 23).  Thus, even if this Court had the authority to grant an extension, in the absence of any showing of good cause, the Court would decline to extend the three-month statutory deadline.[3]

The seminal statement guiding the application of the three-month notice requirement of Section 3813 is found in Parochial Bus Systems, Inc. v. Board of Educ. of City of New York, 60 N.Y.2d 539, 547 (N.Y.1983):

> [T]he purpose of section 3813 of the Education Law is to give a school district prompt notice of claims so that investigation may be made before it is too late for investigation to be efficient.  The essential elements to be included in the notice are the nature of the claim, the time when, the place where and the manner in which the claim arose . . . Satisfaction of these requirements is a condition precedent to bringing an action against a school district or a board of education and, moreover, failure to present a claim within the statutory time limitation or to notify the correct party is a fatal defect.

Id. at 547 (citations omitted).

Following Parochial Bus, courts have allowed for the possibility that "[a] paper

---

[3]  Plaintiff's reliance upon Bucalo v. East Hampton Union Free School Dist., 351 F.Supp.2d 33 (E.D.N.Y.2005), which is not to the contrary, is misplaced.  There, Judge Spatt applied Kingsley and Boeckman, inter alia, to a similar result, extending the deadline on a single claim that was not time-barred.  See Bucalo, 351 F.Supp.2d at 36 ("The only claim that arose less than one year before the Plaintiff filed the instant motion was her claim of retaliation. As such, the Plaintiff's application to serve a late notice of claim is untimely with regard to her New York State cause of action for age discrimination and the Court may only consider whether to permit the Plaintiff to serve a late notice of claim regarding her claim of retaliation.").

which is not denominated a notice of claim may satisfy that requirement if it provides the necessary information as to the nature of the claim." Mennella v. Uniondale Union Free School Dist., 287 A.D.2d 636 (N.Y.A.D.2001) (petition to Commissioner of Education constituted notice of claim). See also Bucalo v. East Hampton Union Free School Dist., 351 F.Supp.2d 33, 36 (E.D.N.Y.2005) (letter to superintendent of the district and EEOC filings constituted notice of claim); Kushner v. Valenti, 285 F.Supp.2d 314 (E.D.N.Y.2003) (EEOC complaint may provide such notice of claim.).

Nonetheless, despite liberalized standards as to what may constitute a notice of claim, in whatever form the notice is provided it is essential that the notice be presented in a timely manner and to the appropriate governing body. The New York Legislature "has spoken unequivocally that no action or proceeding may be prosecuted or maintained against any school district or board of education unless a notice of claim has been "presented to the governing body," and the New York Court of Appeals has "always insisted that statutory notification to the proper public body or official must be fulfilled." Parochial Bus, 60 N.Y.2d at 549, 547-48 (emphasis in original). Moreover, where a plaintiff relies upon an EEOC Charge to provide notice of her claim, she does so at her own risk. See Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist., 127 F.Supp.2d 452, 456 (S.D.N.Y.2001) (EEOC filing forwarded beyond the three-month period may not constitute notice of claim).

In summary, then, to comply with Section 3813, the plaintiff must (1) fulfill the functional notice requirements defined by Parochial Bus; (2) issue the notice directly to the governing board, and (3) must do so in a timely manner. She must then initiate the action within the one-year statute of limitations. If the procedure is deficient in any

single respect, then a claim based on the actions which gave rise to the notice must be dismissed.

Plaintiff twice communicated with the proper authorities at the D.O.E. regarding her allegations of discrimination. First, in a letter to Chancellor Klein in October, 2003, she grieved Defendant's failure to promote her to the interim Assistant Principal position. Second, she provided notice of claims arising prior to June 24, 2004 in the form of her EEOC filing, which was mailed to the D.O.E. in October 2004. As discussed below, any claim based on the former communication is barred by the statute of limitations. As to the latter communication, because it was not timely presented to the Defendant, the claims based upon the actions which gave rise to it were not properly noticed and must be dismissed. As a result, nothing remains of plaintiff's state and municipal claims, which must be dismissed.

### A.    the October 2003 letter

On September 14, 2003, a month after she was informed by GWHS Principal Hogan on August 5 that she would not be offered the Assistant Principal position, Plaintiff grieved the decision to the Department of Education Office of Equal Opportunity alleging both age-based and national origin/ethnicity-based discrimination.   When D.O.E. determined that there had been no discrimination, Plaintiff appealed in a letter to Chancellor Klein dated October 17, 2003. That letter incorporated the D.O.E. grievance, and further detailed plaintiff's allegations of a pattern of age-based discrimination in promotion practices. Whether or not that letter constituted proper notice, however, the present lawsuit was commenced in 2005, more than a year after the letter was sent and after the one-year statute of limitations expired

22

on claims arising out of the actions described therein.  See N.Y. Educ. L. § 3813(2-b).

**B.    the October 2004 notice**

Plaintiff filed her EEOC complaint on September 15, 2004.  In that complaint, she detailed allegedly discriminatory and retaliatory acts which took place through the spring of 2004, leading to her June 24, 2004 interview for the permanent Assistant Principal position, and the failure of the committee to contact her, as promised, within "three to five days."  Giving the Plaintiff the benefit of every inference, the acts alleged in the EEOC Charge all took place before June 30, 2004.  The EEOC Charge, however, was not forwarded to Defendant until October 5, 2004, more than three months later, and thus after the three-month limitations period, provided for in N.Y. Educ. L. § 3813(1), had expired.  Therefore, any claim based on the charged acts is barred for failure to provide proper notice of claim.[4]

Because Plaintiff's state and municipal claims are either barred by the statute of limitations, or for failure to file a timely notice of claim, they must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's motion to amend the Complaint and grants Defendant's motion for judgment on the pleadings.

Plaintiff's motion to amend the Complaint is GRANTED 1) to allege the forwarding of the EEOC charge to Defendants on October 5, 2004; and 2) to reconcile

---

[4] ,Plaintiff would have the Court look to the date that the EEOC complaint was filed, as opposed to the date in which the right-to-sue notice was received by the defendant, to determine whether notice was timely given.  It is not the filing of an EEOC charge which satisfies the notice requirement of Section 3813, however, but the provision of the EEOC charge to the Defendant.

the factual allegations in the Complaint to the noticed facts in the EEOC charge as forwarded to Defendant. Plaintiff's motion to amend the Complaint is DENIED 1) to include the additional factual allegations not noticed to Defendants through the EEOC charge; 2) to include a hostile work environment claim; 3) to include a separate ADEA retaliation claim; 4) to include additional state and municipal claims.

Defendant's motion for judgment on the pleadings is GRANTED.

The clerk of the court is respectfully directed to close the case.


SO ORDERED.

Dated:      Brooklyn, New York
           July 25, 2006.


_____/s/_____

I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:


Counsel for the Plaintiff

Sheldon G Karasik
Karasik & Associates LLC
28 West 36th Street
New York, NY 10018
email: sklawfirm@yahoo.com

Counsel for Defendant

Pamela S. Richardson
New York City Law Department
100 Church Street
New York, NY 10007-2601
email: prichard@law.nyc.gov