THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------x
ENID XIMINES,

                Plaintiff,

    -against-                       MEMORANDUM AND ORDER
                                          05 - CV - 1214
NEW YORK CITY DEPARTMENT OF        07 - CV - 4390
EDUCATION,

                Defendant.
------------------------------------------------x

GLASSER, United States Senior District Judge

## INTRODUCTION

Plaintiff, Enid Ximines ("Ximines" or "Plaintiff"), a high school teacher, brought two actions against her current employer, the New York City Department of Education ("DOE" or "Defendant"), alleging that the DOE subjected her to discrimination, retaliation and a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56.[1]

---

[1] Defendant asks that the factual assertions in its Local Rule 56.1 statement be deemed admitted by the Plaintiff because of her failure to comply with the requirements of FRCP 56 and Local Rule 56.1 in her opposition to Defendant's summary judgment papers. Local Rule 56.1, in relevant part, sets out:

(b) The papers opposing a motion for summary judgment shall include ***a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving Party*** . . .

1

## BACKGROUND

The Plaintiff was a teacher at George Wingate High School. On March 4, 2005, she commenced an action ("Action I") against the DOE alleging violations of the ADEA; the New York State and New York City Human Rights Laws.[2] (05-CV-1214, Document #1.) The Defendant's motion for judgment on the pleadings was granted in a Memorandum and Order ("M&O") reported in 2006 WL 2086483 (E.D.N.Y. July 25, 2006), in which the procedural history and legal issues are discussed in detail and familiarity with which is assumed. Plaintiff appealed the decision to the Second Circuit. On February 20, 2008, the Second Circuit affirmed the Court's Action I judgment in all respects, save that it vacated the Court's denial of leave to amend the complaint to include a claim for failure to promote Ximines to assistant principal ("AP") of the mathematics department ("AP Math Position") in the summer of 2004. See Ximines v. George Wingate High School, 516 F.3d 156, 160 (2d Cir. 2008).[3] The Second Circuit

---

(c) ***Each numbered paragraph in the statement of*** material facts set forth [by the moving party] will be deemed to be admitted ***for purposes of the motion*** unless ***specifically*** controverted by ***a correspondingly numbered paragraph in*** the statement required to be served by the opposing party.
(d) Each statement . . . ***controverting any statement of material fact,*** must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e). (Emphases in original.)

While deeming all of Defendant's factual assertions as admitted would be justified based on her failure to follow Local Rule 56.1, the Court will simply note that many of Plaintiff's factual allegations do not respond or correspond to Defendant's numbered statements in its 56.1 submission, nor do they contain citations to any evidence in the record, but are instead bald assertions and ipse dixit.

[2] Plaintiff was born in 1948, and was fifty-seven years old when she filed Action I.

[3] The parties later stipulated that "George Wingate High School" was not a proper defendant, and the proper Defendant was "The New York City Department of Education." (See 05-CV-1214, Document #51.) The caption of the case was amended accordingly.

remanded for further proceedings. Plaintiff thereafter filed an amended complaint on March 21, 2008. (Document #48, Action I.) The amended complaint contains many of the same claims that had already been considered, and denied, by the Court in its July 25, 2006 M&O. Specifically, Ximines realleges discrimination and retaliation claims regarding: (1) a 2003 failure to promote claim concerning the interim AP Math Position; (2) the principal's comments that the school needed a "vibrant" person; (3) perceived retaliation by Atina Modesto, the person appointed to the interim AP Math Position, in the form of offhand comments, changing student grades, an evaluation of "unsatisfactory" and uninvited intrusions into the classroom; and (4) the denial of promotions to AP positions at various other schools within the New York City public school system. (See Am. Compl., Document #49, Action I.) As these claims have already been dismissed on the merits in the July 25, 2006 M&O, they are precluded. Therefore, the only surviving claim from Plaintiff's Action I complaint is the summer 2004 failure to promote claim remanded by the Second Circuit.

While the Second Circuit decision was still pending, Plaintiff filed a second complaint ("Action II") alleging that the Defendant subjected her to additional instances of age discrimination, retaliation and a hostile work environment on account of her age between 2005 and 2007. (Compl., 07-CV-4390, Document #1.) Specifically, in Action II, plaintiff alleges that the Defendant: (1) assigned her to a "remote, dingy classroom . . . on a high floor of the school building" in the fall of 2005; (2) interrupted her during class on several occasions in the spring of 2006; (3) refused to give her an annual rating on the last day of school in 2007; (4) gave her an annual professional performance

3

appraisal of "unsatisfactory" in 2006. (Id. at ¶¶ 12-19.) She further claims that the Defendant did these things for (1) age discriminatory reasons; (2) in retaliation against her for challenging the discrimination; and (3) thereby created a hostile work environment. (Id. at ¶¶ 25, 35, 41.) Actions I and II were consolidated on April 4, 2008, and the DOE now moves for summary judgment on all claims.

**DISCUSSION**

I. Summary Judgment

A district court "shall grant summary judgment" where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). The moving party has the burden to demonstrate that no genuine dispute of material fact exists, and the Court must draw all reasonable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the moving party meets this burden, then the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," id. at 250, and "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). While the Court must proceed cautiously when granting summary judgment in discrimination cases because a plaintiff must usually rely on circumstantial evidence to prove the employer's intent, Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991), "the purpose

of summary judgment would be 'rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" Gentile v. Potter, 509 F.Supp.2d 221, 231 (E.D.N.Y. 2007) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). In determining whether there is a genuine dispute of material fact "it must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

II.　　Discrimination and Retaliation Claims

Under the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff has the initial burden of presenting a prima facie case of discrimination or retaliation. McDonnell Douglas, 411 U.S. at 802. If the plaintiff can make out a prima facie case, the burden shifts to the defendant to put forth some legitimate justification for the alleged unlawful action. Id. at 802–03. If the defendant presents a legitimate justification, it becomes the plaintiff's burden to demonstrate that the defendant's stated reason is pretextual. Id. at 807.

Therefore, in the context of a motion for summary judgment "of discrimination and retaliation claims, the defendant can prevail under the McDonnell Douglas standard either by demonstrating that the plaintiff cannot make the necessary prima facie showing, or by demonstrating that the plaintiff cannot rebut [as pretextual] the defendant's proffered legitimate justification." Vaughn v. City of New York, 2010 WL 2076926 at *8 (E.D.N.Y. May 24, 2010). Although the moving party bears the burden,

a plaintiff alleging unlawful discrimination cannot overcome a motion for summary judgment simply "by offering purely conclusory allegations of discrimination, absent any concrete particulars." Id. at *9 (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

To establish a prima facie case of age discrimination a plaintiff must show that: (1) she was a member of the protected class of persons; (2) she was qualified for the position or promotion; (3) she was subject to an adverse employment action; and (4) the challenged action "occurred under circumstances giving rise to an inference of discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title [and] a material loss of benefits." Id. at 499 (quoting Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). Additionally, the plaintiff bringing suit under the ADEA must "demonstrate that age was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it." Id. at 498 n.2 (citing Gross v. FBL Financial Servs., 129 S. Ct. 2343, 2350-51 (U.S. 2009)).

To establish a prima facie case of retaliation, a plaintiff must adduce evidence sufficient to show that: (1) she engaged in a protected activity; (2) the employer was aware of the activity; (3) the employer took adverse action against the plaintiff; and (4) there is a causal connection between the employee's protected activity and the employer's adverse action, "i.e., that a retaliatory motive played a part in the adverse employment action." Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199,

205-06 (2d Cir. 2006). In order to prove a retaliation claim, a plaintiff must show that the employer's action went beyond "petty slights, minor annoyances, and simple lack of good manners" but instead was "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (U.S. 2006) (citation and internal quotations omitted).

For purposes of this motion, the Defendant does not dispute that Ximines has met the first two requirements necessary to prove a prime facie case of discrimination and retaliation. (See Def. Mem. of Law, pp. 7, 19.) After a plaintiff establishes a prima facie case of either discrimination or retaliation, the McDonnell Douglas burden shifting analysis is triggered. Slattery v. Swiss Reinsurance America Corp., 248 F.d 87, 94 (2d Cir. 2001).

    a. Classroom Assignment

Ximines argues that for the fall 2005 school term, she was assigned to a "remote dingy classroom," and that this was done for discriminatory and retaliatory reasons. (Compl., Action II, ¶ 15.) She alleges that in the classroom: the paint was peeling off the walls, lights were broken, and the windows were in such a state of disrepair that when the weather "became colder and colder, students and plaintiff had to keep on their coats, [s]tudents kept their hoods over their heads but the cold air drastically affected the right side of plaintiff is [sic] face and ear." (Pl. Response Mem. pp. 9-10.) Plaintiff also

alleges that the room should not have been used because it was "cited to be cleaned up because [it] contained hazardous materials." (Id. at 10.)

The claimed classroom conditions aside, these allegations simply do not make out a prima facie case of age discrimination. Ximines has alleged no facts from which a causal connection can be inferred between her age and the room assignment.

With regard to Plaintiff's retaliation claim, drawing all reasonable inferences in the Plaintiff's favor, Ximines may be able to establish a prima facie case that she was assigned to the classroom in retaliation for her complaints. Being subjected to a teaching environment, which was so cold that Plaintiff's ear would become "numb," (id.) rises above the level of "minor annoyances" to the level of a material adverse change in her employment conditions. The temporal connection between Plaintiff's filing of the Action I complaint and her assignment to this classroom the next teaching semester may warrant the inference that a retaliatory motive prompted the room assignment.

However, this claim cannot survive the McDonnell Douglas burden shifting analysis. The Defendant has responded with legitimate justifications for Ximines's classroom assignment, which the Plaintiff is unable to rebut. Specifically, Principal Hogan ("Hogan"), who assigned Ximines to the classroom, stated in his deposition that the building was overcrowded, with five schools . . . sharing the building and "five principals, [all] jockeying for space." (Pl. 56.1, Miller Decl., Ex. H, Hogan Dep. p. 217.) Furthermore, Hogan stated that he desired to switch Plaintiff's classroom assignment with another teacher's, but that it was unsuccessful because their different schedules

8

would cause substantial disruption. (Id. pp. 215-16.) Importantly, the evidence presented by the Defendant is that Hogan was aware of the Plaintiff's unhappiness with the room assignment and transferred her to a new room in the beginning of the next semester in January, just months away. (Id. see also Def. 56.1 statement, Hogan Decl., Exs. Z, AA.) The reasons advanced for the room assignment together with the Defendant's remediation of it clearly satisfy the Defendant's McDonnell Douglas burden of providing legitimate reasons for the conduct complained of which the Plaintiff has not disputed and has not shown to be pretextual.

      b. Classroom Interruptions

Ximines also alleges that on several occasions, beginning on March 21, 2006, she was "victimized by one of several acts of unannounced classroom invasion" by a male visitor she had never seen before for discriminatory and retaliatory reasons. (Compl., Action II, ¶ 16.) She claims he was sent, presumably by Hogan "to intrude and invade Plaintiff's class to embarrass and demean her." (Pl. Response Mem. pp 29.) Plaintiff states that she viewed the visitor as a very dangerous person because he came to the classroom unannounced, and "wonders how can safety be guaranteed, if the person who entered the classroom had a violent motive." (Id. pp 29-30.)

Plaintiff's conclusory allegations of unannounced classroom interruptions cannot establish a prima facie case of discrimination or retaliation. Without discussing the Defendant's response to this claimed violation, it is clearly apparent that it is a claim based upon nothing but the hypothesis that only because Ximines had never seen this

9

person before, he was sent there to embarrass and harass her and that her safety was threatened because his motive for being in her classroom was one of violence. Those rambling allegations cannot survive a motion for summary judgment. That aside, the "violent stranger" was a tutor assigned to her class by the principal who inadvertently neglected to advise her in advance of that fact. If her allegation were not dismissed without more, the Defendant's legitimate non-discriminatory, non-pretextual response would compel it.

   c. Refusal to Give 2006-2007 Annual Performance Review

  Ximines also claims that she was discriminated and retaliated against on the last day of school of the 2006-2007 school term (June 27, 2007) because she was told by the Principal "that she would not receive a rating because she was in litigation against the Department of Education." (Compl. Action II, ¶ 19; <u>see</u> <u>also</u> Pl. Response Mem. pp. 8-9.) Even viewed in the light most favorable to Ximines, the failure to provide her with a review simply does not rise to the level of an adverse employment action required for a prime facie showing of discrimination or retaliation.

  While the statement Plaintiff alleges, required to be assumed true, would arguably be evidence of a retaliatory motive, other than Plaintiff's allegation that this was "nerve wr[a]cking," (Pl. Response Mem. p. 9), she has alleged no adverse *employment* consequences. The record supports Defendant's claim that while Ximines may not have received a paper copy of the annual review on the last day of school, she was recorded in the DOE database as having received a "Satisfactory" annual rating for

the 2006-2007 school year. (Def. Mem. of Law, Peeples Decl. ¶¶ 8-9). Plaintiff provides no evidence whatsoever to rebut that fact except a bare allegation that Defendant's statements "are FALSE." (See Pl. 56.1, ¶ 74.) It goes without saying that a positive annual review, although the Plaintiff was unaware of it, cannot result in adverse employment consequences. Indeed, Ximines's "allegation of adverse actions amounts merely to her own belief that she was treated unfairly." Walder v. White Plains Bd. of Educ., 738 F.Supp.2d 483, 499 (S.D.N.Y. 2010).

        d. Unsatisfactory 2005-2006 Annual Performance Review

Ximines also claims that she received a June 19, 2006 annual rating of "Unsatisfactory" ("U-rating") from Hogan for discriminatory and retaliatory reasons. She alleges that the U-rating was based on October 20th and November 29th 2005 unsatisfactory evaluations which were outdated, false and "motivated by animus," as well as a letter from AP Matthew George ("AP George"), which Ximines classifies as "absurd and obviously pretextual." (Compl., Action II, ¶ 13.)

Defendant does not contest that Plaintiff has pleaded a prima facie case of an adverse employment action for purposes of both her discrimination and retaliation claims.[4] (Def. Mem. of Law p. 9; see also pp. 19-20.) However, Defendant has legitimate non-pretextual reasons supporting the unsatisfactory rating, and Plaintiff has

---

[4] Plaintiff has adequately claimed that the adverse employment effects included a loss of per session work (Compl., Action II, ¶ 14) as well as diminished chances of successfully applying for other teaching positions. (Pl. Response Mem. p.8.)

offered no evidence supporting her claim of a discriminatory and retaliatory motive beyond bare speculation and conjecture.

Specifically, Defendant submitted evidence showing that Ximines lacked lesson plans on multiple occasions during Principal Hogan and AP George's in-class observations and also that she advised AP George by letters that she would refuse to attend scheduled meetings with him. Those letters resulted in the letter of insubordination Ximines claims is pretextual. (Def. 56.1 statement, Hogan Decl., Exs. W, X.) On June 12, 2006, a week before Hogan gave Ximines the U-rating, the record reflects that Hogan and AP George were observing Plaintiff's class when she precipitously refused to continue to teach and abandoned the classroom leaving her pupils still seated there. (Id., Ex. Y.) Not only does Ximines not deny these allegations, but she also does not refute these serious allegations as being unfounded or pretextual. (See Pl. 56.1 statement, ¶¶ 57-58; see also Pl. Response Mem. p. 15.) Unable to rebut Defendant's multiple legitimate non-pretextual explanations, this claim must also fail.

    e. Individual Unsatisfactory Evaluations

Although not alleged in either complaint, Ximines asserts that she received an unsatisfactory evaluation on December 13, 2004 from AP Joelle Dufresne and AP Dion Thomas as well as an unsatisfactory evaluation on March 7, 2005 from Principal Hogan for discriminatory and retaliatory reasons.

While Plaintiff's feelings may have been hurt, she has presented no evidence of having suffered an adverse employment effect, and therefore cannot establish a prima

facie case of discrimination or retaliation. The record reflects the uncontroverted evidence that while Ximines was given these two unsatisfactory evaluations during the fall 2004-spring 2005 school year, she nevertheless received an annual performance review of "Satisfactory" for that year and that the terms and conditions of her employment remained exactly the same. Plaintiff does not allege any adverse effect on her employment after these two unsatisfactory evaluations. (Pl. Response Mem. p. 7.) Under a Title VII discrimination claim, "a negative or critical evaluation will not constitute an adverse employment action unless the evaluation is accompanied by other adverse consequences." Ragin v. East Ramapo Cent. School Dist., 2010 WL 1326779 at *17-18 (S.D.N.Y. Mar. 31, 2010). Similarly, "it is well-established" under a retaliation analysis "that negative evaluations alone do not constitute an adverse employment action in the absence of some attendant effect on the terms and conditions of plaintiff's employment." Jackson v. City Univ. of N.Y., 2006 WL 1751247 (S.D.N.Y. June 23, 2006). Accordingly, these claims must be dismissed.

  f. 2004 Failure to Promote Claim

Regarding Plaintiff's summer 2004 failure to promote claim, the issue on remand, Defendant concedes that Plaintiff has met the first three requirements in establishing a prima facie case of age discrimination. (Def. Mem. of Law, pp. 7,9.) However, the Defendant asserts that the failure to promote Ximines to the AP Math Position could not have occurred under circumstances giving rise to an inference of discrimination because Ximines was interviewed by an independent committee of staff, union members, parents, students and a supervisor under Chancellor's Regulation C-30,

13

which ranked another applicant, Ms. Modesto, above her. (Id. p. 11; see also Def. 56.1 statement, Hogan Decl., Exs. E,F,G.) After Ms. Modesto turned down the position, an excessed AP,[5] Dion Thomas, was appointed to fill it because of a provision in the collective bargaining agreement "requir[ing] that excessed tenured AP's [sic] be placed in vacancies to the fullest extent possible." (Def. Mem. of Law p. 11.)

Plaintiff alleges an inference of discrimination by arguing that: (1) the committee formed to interview the applicants was selected "in an unfair manner" by omitting a member of the Mathematics department so as to negatively affect Plaintiff, in violation of Chancellor's Regulation C-30 ("C-30"); (2) she (Ximines) was not informed that she was not selected for the position in violation of C-30; and (3) the person who ultimately was appointed to the position, Dion Thomas, was selected outside of the selection pool, and therefore in violation of a Chancellor's Regulation to which Ximines does not cite. (Pl. 56.1 ¶ 19, 24, 28; see also Pl. Response Mem. pp. 12-13.)

Assuming, *arguendo*, that these allegations are sufficient to establish an inference of age discrimination, the Defendant has proffered legitimate justifications that the Plaintiff cannot rebut. First, the Defendant cites to Regulation C-30's detailed section on the selection process for principal and assistant principal positions, which includes a detailed list of the persons required to sit on an interviewing committee. (Def. Reply Mem. of Law, citing Miller Decl. Ex. G, Section XI, D&G.) A member of the

---

[5] Excessing occurs when "a teacher is release [sic] from a particular assignment at a school because the position ceased to exist, which in many cases, is the result of the school closing." (Def. 56.1 Statement, Hogan Decl., ¶ 21.)

department for which the applicant is interviewing is not one of the required persons. (Id.) Second, Defendant also cites to Regulation C-30, which contrary to Plaintiff's argument, contains no requirement that an applicant be notified about a position. (Id.) Finally, Defendant established that Dion Thomas, an excessed tenured AP, was appointed to the AP Math Position because of a provision in the collective bargaining agreement which states that if an AP is excessed, and an AP vacancy exists at another school, "the excessed Assistant Principal should be placed in that vacancy to the fullest extent possible." (Decl. of Jill Goldberg, Def. Reply, Ex. A.) Additionally, Chancellor's Regulation C-30, requiring an interview process, explicitly does not apply to the appointment of excessed tenured APs. (See Regulation C-30, Def. 56.1 Statement, Miller Decl. Ex. G, Section I.)

Plaintiff alleges however that there was a vacancy at another high school where Dion Thomas could have been sent, but that Dion Thomas was appointed specifically to Wingate "to continue the discriminatory actions, retaliation and harassment against plaintiff." (Pl. Response Mem. p.14.) This bald assertion, lacking any support in the record, is insufficient to show that the Defendant's justification was pretextual. The DOE has provided a legitimate justification for each of its challenged actions, and Plaintiff's speculative, conclusory and unsupported allegations of discrimination are insufficient to defeat summary judgment on this claim.

VII. Hostile Work Environment

Finally, Ximines alleges that the totality of the aforementioned actions created a hostile work environment. (Compl. Action II, ¶¶ 40-41.) In order to establish a hostile work environment claim under the ADEA, a plaintiff must adduce sufficient evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010) (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)). The plaintiff must show not only that she subjectively perceived the work environment to be hostile or abusive, but that a reasonable person would have also concluded that it was. Id. Finally, the plaintiff must also establish that the alleged abusive conduct occurred because of her age. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). She makes no such causal connection. "[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (Internal quotation omitted.)

Based on the record before the Court, no reasonable jury could conclude that Ximines could prevail on her hostile work environment claim. Looking at the totality of the circumstances, and resolving all inferences in favor of the Plaintiff, she has not shown conduct that is pervasive, nor has she sufficiently demonstrated that the conduct occurred because of her age.

The events alleged do not approach the level of severity or pervasiveness required to make out a hostile work environment claim. While the record suggests that Ximines subjectively perceived the work environment to be both hostile and abusive, neither the Court nor a reasonable person would have concluded that it was either hostile or abusive. See, e.g., Ruggiero v. Harrington, 146 F.supp.2d 202, 217-18 (E.D.N.Y. 2001) (finding that denial of a department chair position; a faulty listing in the university directory; the cancellation of two summer courses plaintiff was supposed to teach; difficulty in obtaining a parking permit and access card; an assignment to different courses than those plaintiff thought she would be assigned for one semester; and delayed notice of a merit award "are administrative mixups, minor annoyances, and perceived slights" which "cannot be considered severe or pervasive harassment.") Anti-discrimination laws "are intended to protect employees from genuine workplace mistreatment and harassment; they are not intended to guarantee that employees will never suffer inconveniences or that their every desire will be fulfilled." Id. at 218.

A causal connection between Defendant's actions complained of and Plaintiff's age is not made. Accordingly, her hostile work environment claim must also be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to all of Plaintiff's claims.

SO ORDERED.

Dated: Brooklyn, New York
July 1, 2011

_____/s/_____

I. Leo Glasser
United States Senior District Judge